UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNERLINE ENGINEERING, INC.,<br><br>  Plaintiff,<br><br>  v.<br><br>OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; DAN REDING AND JAMES E. MURRAY, TRUSTEES, et al.,<br><br>  Defendants. | Case No. 22-cv-03663-JSC<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 12 |

Innerline Engineering, Inc, ("Innerline") brings this lawsuit against Defendants—a series of trust funds and their trustees (collectively, the "Trust Funds")—seeking declaratory relief and restitution for unjust enrichment. The Trust Funds move to dismiss Innerline's claims. (Dkt. No. 12.) After carefully considered the parties' briefing and having had the benefit of oral argument on November 10, 2022, the Court GRANTS the Trust Funds' motion to dismiss to declaratory relief claim and declines to exercise supplemental jurisdiction of the state law unjust enrichment claim.

**BACKGROUND**

This dispute arises from an earlier lawsuit—*Operating Engineers' Health and Welfare Trust Fund for Northern California, et al., v. Caribou Energy Corporation, et al.*, in the United States District Court, Northern District of California, Case No. 4:18-cv-02086-YGR. In that case, the Trust Funds (who are the defendants in this matter) sued Rafael Padilla ("Padilla") and the Caribou Energy Corporation ("Caribou") for outstanding fringe benefit contributions, liquidated damages, interest, attorneys' fees, and costs owed to the Trust Funds under the Employee

Retirement Income Security Act of 1974 ("ERISA") § 3(3), 29 U.S.C. § 1002(3) and the parties' contract. (*See* Case No. 3:18-cv-02086-YGR, Dkt. No. 1.) Padilla, Caribou, and the Trust Funds settled the underlying suit in July 2018. (Dkt. No. 1 ¶ 13.)

The settlement agreement established a total judgment of $345,849.44. (Dkt. No. 1-1 at 4.) The agreement defined Padilla as the "Guarantor" and confirmed that Padilla was "personally guaranteeing the amounts due herein." (*Id.* at 3.) Padilla and Caribou further confirmed:

> [T]hat all successors in interest, assignees, and affiliated entities (including, but not limited to, parent or other controlling companies), and any companies with which either Defendant joins or merges, if any, shall also be bound by the terms of this Stipulation as Guarantors. This shall include any additional entities in which Guarantor is an officer, owner or possesses any controlling ownership interest. All such entities shall specifically consent to the Court's jurisdiction, the use of a Magistrate Judge for all proceedings, and all other terms herein, in writing, at the time of any assignment, affiliation or purchase.

(*Id.*) The contract also created procedures in the event of default. (*Id.* at 7 ¶ 10.) If Padilla or Caribou defaulted, the Trust Funds were required to make a written demand for payment. (*Id.*) If Padilla and Caribou failed to cure the default with seven days, all amounts remaining due would become payable to the Trust Funds. (*Id.*) In the event of an uncured default, the contract provided that "unpaid or late-paid contributions, together with 20% liquidated damages and 10% per annum interest shall become part of [the] Judgment." (*Id.* ¶ 11.) To enforce this provision, the stipulated judgment states that "[a] Writ of Execution may be obtained without further notice, in the amount of the unpaid balance plus any additional amounts due under the terms herein. Such Writ of Execution may be obtained solely upon declaration by a duly authorized representative of Plaintiffs setting forth the balance due as of the date of default." (*Id.* at 8 ¶ 12.)

The Court entered this stipulation as a judgment on July 3, 2018. (*Id.* at 10.) Roughly three months later, the Trust Funds filed a notice of default with the Court. (*Id*. at 16.) Because Padilla and Caribou failed to comply with the agreement, the Trust Funds requested a new Writ of Execution for $535,144.35 (the principle amount due plus $189,294.91 in ongoing contribution amounts during the default period, liquidated damages, and interest). (*Id.* at 21 ¶ 8.)

The Trust Funds requested that the Court enter the Writ of Execution against Caribou,

1    Padilla, and Innerline Engineering (the plaintiff in this matter).  (*Id.* at 21 ¶ 10.)  Although

2    Innerline was not a party in the case, the Trust Funds wished to add Innerline under the guarantor

3    provision in the stipulation.  (*Id.*)  The Trust Funds provided evidence that Padilla served as a

4    corporate officer for Innerline when he signed the stipulated judgment.  (*Id.*)

5          The Court entered the Writ of Execution against Innerline and Padilla in the amount of

6    $535,144.35 and the Trust Funds served the Writ on Innerline in October 2018.  (Dkt. No. 1 ¶ 21.)

7    Since that date, the Trust Funds have levied "in excess of $438,000.00" against Innerline's assets.

8    (*Id.* ¶ 23.)

9    **DISCUSSION**

10         Innerline brings two claims against the Trust Funds.  First, Innerline requests declaratory

11   judgment that the Writ of Execution is invalid and may not be properly levied upon to satisfy the

12   judgment in the underlying action.  (*Id.* ¶ 27.)  Second, Innerline requests restitution of more than

13   $438,000.00 levied, based on an unjust enrichment theory.  The Trust Funds move to dismiss for

14   failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

15   **I.     Subject-Matter Jurisdiction**

16         As an initial matter, the Court must determine whether subject-matter jurisdiction exists

17   over this dispute.  The procedural posture here is atypical.  Usually, a party attacking a federal

18   judgment would file a motion in the underlying matter.  *See* Federal Rule of Civil Procedure 60.

19   Here, however, Innerline filed a new action.  Innerline seeks declaratory relief that the Writ of

20   Execution in the underlying action was invalid and demands an additional equitable remedy—

21   $438,000 in restitution for unjust enrichment.  (Dkt. No. 1 ¶¶ 24–33.)

22         There is no traditional basis for federal subject-matter jurisdiction here.  The Declaratory

23   Judgment Act, 28 U.S.C. § 220, does not confer federal question subject-matter jurisdiction.  *Fid.*

24   *& Cas. Co. v. Rsrv. Ins. Co.*, 596 F.2d 914, 916 (9th Cir. 1979).  And unjust enrichment claims

25   rest on state common law, not a federal question.  *See Berger v. Home Depot USA, Inc.*, 741 F.3d

26   1061, 1070 (9th Cir. 2014), *abrogated on other grounds by Microsoft Corp. v. Baker*, 198 L. Ed.

27   2d 132, 137 S. Ct. 1702 (2017). And Innerline does not allege diversity subject-matter jurisdiction

28   exists under 28 U.S.C. § 1332.  Rather, Innerline argues this Court has jurisdiction to review the

Writ of Execution entered in the underlying federal action even though Innerline's invalidity argument rests on state law grounds and no diversity exists. (Dkt. No. 1 ¶ 8.) The Court agrees.

Practically speaking, Innerline's action is an independent action in equity to set aside an earlier judgment made in this same court. *See* Fed. R. Civ. P. 60(b). If Plaintiff were to proceed under Rule 60(b) by motion in the underlying suit, the court would have jurisdiction to decide the motion because of its jurisdiction over the subject-matter in the underlying case—the ERISA claim. But an independent action for relief from the judgment must be supported by its own jurisdictional grounds. *See* JAMES W. MOORE, ET AL., 12 MOORE'S FEDERAL PRACTICE § 60.84 (2022) (collecting cases).

The concept of "ancillary" equitable jurisdiction covers this scenario. *See Pacific R.R. of Missouri v. Missouri Pac. Ry. Co.*, 111 U.S. 505, 521-22 (1884). "Ancillary jurisdiction [exists] over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments—including attachment, mandamus, garnishment, and the prejudgment avoidance of fraudulent conveyances." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (collecting cases). "When the basis for federal jurisdiction of the original suit no longer exists, either because there is no longer diversity of citizenship or because the claims in the new suit do not arise under federal law, the district court that entered the original judgment has inherent 'ancillary' equitable jurisdiction to entertain the suit for relief from the judgment." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2d Cir. 1990); *see also Pacific R.R.*, 111 U.S. at 521–22 (holding that even when the diversity on which jurisdiction of the earlier suit rested did not exist in the second suit, "there can be no doubt that the [lower court that entered the earlier judgment] had jurisdiction" over a suit to vacate that judgment for alleged fraud).

Thus, because this Court entered the judgment—which underlies the contested Writ at issue—this Court has ancillary jurisdiction to decide whether relief from that Writ is appropriate through an independent action in equity. *See Valerio v. Boise Cascade Corp.*, 645 F.2d 699, 700 (9th Cir. 1981) (finding district court had ancillary jurisdiction of a "fraud on the court" allegation and pendant jurisdiction to hear state law fraud claims based on an underlying settlement).

## II. The Declaratory Relief and Unjust Enrichment Claims

Innerline seeks declaratory relief that the Writ of Execution violated its due process rights and equitable relief (restitution) for the amounts paid to the Trust Funds.

### A. Declaratory Relief

Declaratory relief is appropriate to prospectively declare future rights, rather than to redress past wrongs. *See Societe de Conditionnement en Aluminium v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981). Innerline seeks declaratory judgment that the Trust Funds "have improperly and unlawfully levied funds in an amount in excess of $438,000" and states there is an actual controversy as to "whether funds may be properly levied upon pursuant to the Writ of Execution." (*Id.* ¶¶ 26, 27.) The Trust Funds argue these questions only address past harms and therefore are inappropriate for declaratory relief. The Court agrees.

The first dispute is not a proper subject for declaratory relief. The Trust Funds have levied over $438,000.00 from Innerline since 2018. (Dkt. No. 1 ¶ 23.) But that is a past harm; thus, declaratory relief is unavailable as to the money already levied. *Mangindin v. Washington Mut. Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action.")

The latter question—the ongoing validity of the Writ—could be a proper subject for declaratory relief. However, the Writ expired 180 days after issuance, long before this action was filed. *See* Cal. Code. Civ. P. § 699.530(b). As there is no prospective relief to be obtained through the declaratory judgment claim, it must be dismissed.[1]

---

[1] In a reply brief, the Trust Funds argued that the Writ expired 180 days after issuance. (Dkt. No. 24 at 10.) The Trust Funds did not cite to any authority for that proposition. At oral argument, the Trust Funds indicated a federal rule may have been the source of the 180-day requirement. The Court invited the Trust Funds to file a letter specifying the federal rule at issue. The Trust Funds were wrong. No federal rule applies. *See* Fed. R. Civ. P. 69. However, the Trust Funds informed the Court via letter that California Code of Civil Procedure § 699.530(b) provides the 180-day deadline. (Dkt. No. 28.) Innerline objects to that letter because it refers to a non-federal rule that was not cited in the Trust Funds' briefing. (Dkt. No. 30.) Innerline's objection is noted. But the Court still concludes that California Code of Civil Procedure § 699.530(b) moots the declaratory relief claim as to the Writ of Execution. If Innerline believes California Code of Civil Procedure § 699.530(b) is not controlling, Innerline may file a motion for reconsideration.

### B. Unjust Enrichment

Ancillary jurisdiction exists as to the claim for declaratory relief as that claim challenges the Writ issued by the federal court pursuant to a federal judgment. As the Court is dismissing the declaratory judgment claim, it declines to exercise supplemental jurisdiction of the state law unjust enrichment claim. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' motion to dismiss the declaratory relief claim and declines to exercise supplemental jurisdiction of the unjust enrichment claim. Plaintiff may file an amended complaint within 30 days of this Order.

This Order disposes of Docket No. 12.

**IT IS SO ORDERED.**

Dated: November 14, 2022

JACQUELINE SCOTT CORLEY
United States District Judge