UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INNERLINE ENGINEERING, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA; DAN REDING AND JAMES E. MURRAY, TRUSTEES, et al.,<br><br>    Defendants. | Case No. 22-cv-03663-JSC<br><br>**ORDER ON MOTION TO DISMISS**<br><br>Re: Dkt. No. 35 |

Innerline Engineering, Inc, ("Innerline") brings this lawsuit against Defendants—a series of trust funds and their trustees (collectively, the "Trust Funds")—for relief from a prior judgment in equity, unjust enrichment, and conversion. The Trust Funds move to dismiss Innerline's claims. (Dkt. No. 35.)[1] After carefully considered the parties' briefing and having had the benefit of oral argument on March 23, 2023, the Court DENIES the Trust Funds' motion to dismiss. Innerline has standing to challenge the underlying judgment via an independent action in equity and this Court has jurisdiction to review that action. Defendants' argument that Innerline fails to state a claim is unpersuasive.

**BACKGROUND**

**I.    The Underlying Lawsuit**

This dispute arises from an earlier lawsuit—*Operating Engineers' Health and Welfare Trust Fund for Northern California, et al., v. Caribou Energy Corporation, et al.*, in the United States District Court, Northern District of California, Case No. 4:18-cv-02086-YGR. In that case, the Trust Funds (who are the defendants in this matter) sued Rafael Padilla ("Padilla") and the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Caribou Energy Corporation ("Caribou") for outstanding fringe benefit contributions, liquidated damages, interest, attorneys' fees, and costs owed to the Trust Funds under the Employee Retirement Income Security Act of 1974 ("ERISA") § 3(3), 29 U.S.C. § 1002(3) and the parties' contract. (*See* Case No. 3:18-cv-02086-YGR, Dkt. No. 1.)  Padilla, Caribou, and the Trust Funds settled the underlying suit in July 2018. (Dkt. No. 34 ¶ 12.)

The settlement agreement established a total judgment of $345,849.44. (Dkt. No. 34-1 at 4.) The agreement defined Padilla as a "Guarantor" and confirmed Padilla was "personally guaranteeing the amounts due herein." (*Id.* at 3.)  Padilla and Caribou further confirmed:

> [T]hat all successors in interest, assignees, and affiliated entities (including, but not limited to, parent or other controlling companies), and any companies with which either Defendant joins or merges, if any, shall also be bound by the terms of this Stipulation as Guarantors. This shall include any additional entities in which Guarantor is an officer, owner or possesses any controlling ownership interest. All such entities shall specifically consent to the Court's jurisdiction, the use of a Magistrate Judge for all proceedings, and all other terms herein, in writing, at the time of any assignment, affiliation or purchase.

(*Id.*)  The contract also created procedures in the event of default. (*Id.* at 7 ¶ 10.)  If Padilla or Caribou defaulted, the Trust Funds were required to make a written demand for payment. (*Id.*)  If Padilla and Caribou failed to cure the default within seven days, all amounts remaining due would become payable to the Trust Funds. (*Id.*)  In the event of an uncured default, the contract provided that "unpaid or late-paid contributions, together with 20% liquidated damages and 10% per annum interest shall become part of [the] Judgment."   (*Id.* ¶ 11.) To enforce this provision, the stipulated judgment states: "A Writ of Execution may be obtained without further notice, in the amount of the unpaid balance plus any additional amounts due under the terms herein. Such Writ of Execution may be obtained solely upon declaration by a duly authorized representative of Plaintiffs setting forth the balance due as of the date of default."  (*Id.* at 8 ¶ 12.)

The Court entered this stipulation as a judgment on July 3, 2018 (the "Judgment"). (*Id.* at 10.)  Roughly three months later, the Trust Funds filed a notice of default with the Court. (*Id.* at 16.)  Because Padilla and Caribou failed to comply with the agreement, the Trust Funds requested a new Writ of Execution for $535,144.35 (the principle amount due plus $189,294.91 in ongoing

contribution amounts during the default period, liquidated damages, and interest). (*Id.* at 21 ¶ 8(f).)

The Trust Funds requested the Court enter the Writ of Execution against Caribou, Padilla, and Innerline Engineering (the plaintiff in this matter). (*Id.* at 21 ¶ 10.) Although Innerline was not a party in the case, the Trust Funds wished to execute the Writ against Innerline under the guarantor provision in the Judgment. (*Id.*) The Trust Funds provided evidence Padilla served as a corporate officer for Innerline when he signed the Judgment. (*Id.*)

The Court entered the Writ of Execution against Innerline in the amount of $535,144.35 and the Trust Funds served the Writ on Innerline in October 2018. (Dkt. No. 34 ¶ 20.) Since that date, the Trust Funds have levied "in excess of $438,000.00" against Innerline's assets based on the Writ executed from the Judgment. (*Id.* ¶ 23.)

## II.  Procedural Background

Innerline sued the Trust Funds in Alameda County Superior Court in July 2020.[2] (Dkt. No. 36-1 at 8.) Innnerline sought declaratory relief the Writ was invalid and restitution for unjust enrichment. (*Id.* at 15.) In February 2021, the state court stayed Innerline's suit to avoid conflicting rulings because Innerline could challenge the writ in federal court. (*Id.* at 46-47.)

Innerline filed this action in June 2022. Initially, Innerline sought declaratory relief the Writ was invalid and restitution for unjust enrichment. (Dkt. No. 1.) The Trust Funds moved to dismiss. (Dkt. No. 12.) The Court dismissed Innerline's declaratory relief claim and declined supplemental jurisdiction over the unjust enrichment action. Specifically, the Court determined

---

[2] Defendants request the Court take judicial notice of previous suits involving the parties in this case and the underlying litigation. Generally, a district court cannot "consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6);" however, Federal Rule of Evidence 201 allows a district court to do so through judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). A court can take judicial notice of facts "not subject to reasonable dispute" because they are "generally known within the court's territorial jurisdiction" or can be "accurately determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). This includes "undisputed matter of public record, including documents on file in federal and state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

The Court GRANTS Defendants' request as to the parallel state court proceedings (Dkt No. 36, Exs. F, G, and H), and the bankruptcy court filings (Exs. I through O). The Court DENIES Defendants' motion as to Exhibit E. Contrary to Defendants' argument, the email from Caribou to Defendants confirming payment does not form the basis for the complaint nor is it referenced in that document.

3

ancillary subject matter jurisdiction exists in this Court to review earlier judgments (and writs based on those judgments). But declaratory relief was unavailable as to the Writ because the Writ had already expired. So, Plaintiff's sole federal claim was moot. Plaintiff then filed a First Amended Complaint ("FAC"), seeking to void the Judgment as to Innerline, restitution for unjust enrichment, and damages for conversion of the levied funds.

## DISCUSSION

The Trust Funds move to dismiss under Federal Rules 12(b)(1) and 12(b)(6). Under Rule 12(b)(1), the Trust Funds argue Innerline lacks standing to challenge the Judgment. Under Rule 12(b)(6), the Trust Funds argue Innerline fails to state a claim upon which relief can be granted. (Dkt. No. 35 at 3.) The Court disagrees and DENIES the Trust Funds' motions to dismiss.

**I.    The Trust Funds' Motion to Dismiss under Rule 12(b)(1)**

**A.    Justiciability and Jurisdiction**

The Trust Funds' standing argument actually encompasses three different doctrines. To clarify matters, the Court will parse these arguments into their respective doctrinal categories. First, the Trust Funds claim Innerline lacks standing to challenge the Judgment itself (rather than the Writ of Execution based on the Judgment). Second, the Trust Funds imply this Court's prior motion to dismiss order only addressed ancillary jurisdiction to review the writ, rather than jurisdiction to review the Judgment. Third, the Trust Funds argue the challenge to the Judgment may only be lodged via a Rule 60(b)(4) motion in the underlying case, rather than through an independent action in equity. Each argument is unpersuasive.

**1.    Standing**

Standing consists of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* The Trust Funds challenge whether Innerline "suffered a cognizable injury as a result of the Stipulation in the Underlying Action." In particular, they contend given Innerline pleads it was not a party to the Judgment, but that it was (improperly) made a party to the underlying writ, Innerline pleads only that it was injured by the writ, not the Judgment. So, Innerline does not have

4

1  standing to challenge the Judgment.

2  The Trust Funds' argument contradicts Ninth Circuit authority. Although the parties neglected to cite any caselaw on this point, the Ninth Circuit has held "[a] nonparty may seek relief from a judgment procured by fraud if the nonparty's interests are *directly affected*." *Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 777 (9th Cir. 1994); *see also Herring v. F.D.I.C.*, 82 F.3d 282, 285 (9th Cir. 1995) (reaffirming the "directly affected" standard as to parties challenging an underlying judgment). While the challenge here is not one of fraud on the court, there is no reason why that "directly affected interests" standard should not also apply here. The Complaint alleges the Trust Funds used the Judgment to obtain a writ to levy Innerline's bank account. (Dkt. No. 34 ¶ 18.) The Trust Funds do not contest this. For example, in the Trust Funds' motion to dismiss they state: "Defendants note that they relied on the clear terms of the Stipulation to bind Innerline as a Guarantor/Judgment Debtor and not CCP Section 187." (Dkt. No. 35 at 31.) In other words, the Trust Funds argue the Judgment authorized the Writ. Thus, even if Innerline is not a party to the Judgment, Innerline has standing to challenge the Judgment as void because the Judgment "directly affected" its interests.

### 2. Ancillary Subject Matter Jurisdiction

The Trust Funds also argue this Court's earlier Order "only addresses and finds ancillary jurisdiction over the Writ in the Underlying Action and not the stipulated judgment." (Dkt. No. 40 at 8.) To clarify matters, this Court has ancillary subject matter jurisdiction to review Innerline's motion for relief from the Judgment rendered in the Northern District of California. *United States v. Beggerly*, 524 U.S. 38, 46 (1998). Indeed, this Court only had jurisdiction to review the Writ in the first motion to dismiss Order *because* the Court has jurisdiction to review its earlier judgments. Thus, ancillary subject matter jurisdiction exists here.

### 3. Equitable Jurisdiction

The Trust Funds' final "standing" argument—that Innerline should have brought a motion under Rule 60(b)(4) rather than an independent action in equity—is better categorized as a challenge to this Court's equitable jurisdiction. *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022) ("Equitable jurisdiction is distinct from subject matter jurisdiction, although

5

both are required for a federal court to hear the merits of an equitable claim.")  At bottom, the Court disagrees with the Trust Funds.  The availability of a Rule 60(b)(4) motion does not preclude Innerline from bringing an independent action in equity here.

### a. The Rule 60 Scheme

To understand how the Trust Funds' 60(b)(4) argument touches on equitable jurisdiction, it is necessary to explain how the independent action in equity fits within the larger context of Federal Rule of Civil Procedure 60.

Rule 60 enumerates certain procedures to obtain relief from a judgment or order.  Fed. R. Civ. P. 60.  Rule 60(a) covers corrections to judgments to remedy clerical mistakes, oversights, and omissions in judgments.  Rule 60(b), by contrast, allows the court to relieve "a party or its legal representative from a final judgment, order, or proceeding for the following reasons":

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Under Rule 60(c), motions under 60(b)(1), (2), and (3) must be brought within one year.  All other provisions must be utilized "within a reasonable time" after the entry of judgment or the date of the proceeding.  Fed. R. Civ. P. 60(c).

But Rule 60 is not the exclusive means to obtain relief from a prior judgment.  Rule 60(d) provides: "This rule does not limit a court's power to: (1) entertain an independent action to relieve a party from a judgment, order, or proceeding…"  So, Rule 60 "does not limit" any equitable power that already exists. *Lapin v. Shulton, Inc.*, 333 F.2d 169, 171 (9th Cir. 1964) ("[Rule 60(d) preserves to courts the powers which theretofore they had been free to exercise…")  And such equitable power does exist.  A party seeking equitable relief through an independent action must satisfy the traditional equitable requirements for such suits.  Those elements are traditionally stated as:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*Beggerly*, 524 U.S. at 41; *see also National Sur. Co. v. State Bank of Humboldt, Neb.*, 120 F. 593, 599 (8th Cir. 1903) (stating the traditional equitable factors prior to the Federal Rules of Civil Procedure). The Trust Funds' final standing argument seems to seize on this fifth element: the absence of any adequate remedy at law.

### b. Alternative Remedies at Law

The crux of the jurisdictional dispute here is whether some alternative remedy at law exists to redress Innerline's alleged injury. This matters from a jurisdictional perspective (rather than just a merits perspective) because equitable jurisdiction in federal courts is limited. In diversity actions, for example, federal courts lack equitable jurisdiction where an adequate remedy at law remains available. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 842 (9th Cir. 2020); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (concluding the district court lacked equitable jurisdiction to hear a claim where the plaintiff had an adequate remedy at law under federal equitable jurisdiction principles). The same principal applies for independent actions in equity absent diversity jurisdiction. If an adequate remedy at law exists, an independent action in equity fails. *United States v. Beggerly*, 524 U.S. 38, 41 (1998) (discussing the elements of an independent action in equity as jurisdictional).

The Trust Funds suggest Rule 60(b)(4) is a "remedy at law" precluding equitable relief for Innerline's independent action and state law unjust enrichment claims. (Dkt. No. 34 at 3, 33; Dkt. No. 40 at 7, 19-20.) Thus, the Court must consider whether it may exercise equitable jurisdiction via an independent action in equity when a party could raise a motion via Rule 60(b)(4) in the underlying action. In other words, does Rule 60(b)(4) provide a "remedy at law" that precludes equitable jurisdiction over Innerline's independent action?

The answer is no. Rule 60(b)(4) is not a "remedy at law;" it is a procedure to obtain a remedy. Independent actions in equity simply provide a different path to the same remedy. The Ninth Circuit's reasoning in *Nevada VTN v. Gen. Ins. Co. of Am.*, 834 F.2d 770, 775 (9th Cir.

1987) supports this functional approach.  There, the court observed: "An independent action resembles a separate suit, yet it seeks in essence to duplicate the relief afforded by a motion in the original proceedings." *Id.*  Thus, "motions and independent actions for relief commonly have been treated as interchangeable." *Id.*  Most out-of-circuit authority takes the same approach. C. Wright & A. Miller, 11 *Federal Practice & Procedure* § 2868 (3d ed. 2022) (collecting cases for the proposition that "[a] party is not bound by the label used in the party's papers. A motion may be treated as an independent action *or vice versa as is appropriate*.") (emphasis added); *see also Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77 n.7 (5th Cir. 1970) ("Where the adverse party is not prejudiced an independent action for relief may be treated as a 60(b) motion, and conversely, a 60(b) motion may be treated as the institution of an independent action.")  So, if a motion in the underlying action and an independent action in equity are "interchangeable" because independent actions "in essence [seek] to duplicate the relief" of a motion in the underlying case, *see Nevada VTN*, 834 F.2d at 775, it would make no sense to *preclude* equitable jurisdiction over independent actions for failure to pursue a motion in the underlying case.  Put differently, because 60(b)(4) motions and independent actions in equity are interchangeable, the availability of the former does not divest this Court of jurisdiction to hear the latter. To put it yet another way, a Rule 60(b)(4) motion is not a *legal* remedy; it is an alternative means to obtain an equitable remedy in this context.

Although the Trust Funds fail to cite any case to support the proposition that Rule 60(b)(4) relief is a remedy at law, their position is not entirely without authority. At least one federal court has held an independent action in equity is unavailable when relief could be obtained via a Rule 60(b)(4) motion in a different jurisdiction. *See Taft v. Donellan Jerome, Inc.*, 407 F.2d 807, 808 (7th Cir. 1969) ("Plaintiff has an adequate remedy at law and since he failed to exhaust his legal remedies under Rule 60(b)(4), he should not be allowed to bring an equitable action in another jurisdiction.")  But the Seventh Circuit in *Taft* did not explain how Rule 60(b) provides a remedy "at law."  Rather, that case is better read as a presumption against the exercise of equitable jurisdiction when a party pursues an independent action in a jurisdiction that did not issue the underlying judgment.  In a cross-jurisdictional situation, the failure to bring a 60(b)(4) motion in

the underlying action raises comity concerns between different federal jurisdictions. *See Lapin v. Shulton, Inc.*, 333 F.2d 169, 172 (9th Cir. 1964) (affirming dismissal of independent action where district court refused to exercise equitable jurisdiction on comity grounds); *Treadaway v. Acad. of Motion Picture Arts & Scis.*, 783 F.2d 1418, 1421 (9th Cir. 1986) (discussing comity concerns as discretionary, not jurisdictional). The same comity concerns are not present here because Innerline brought its independent action in the same district court that issued the underlying judgment.

Thus, given the Ninth Circuit's reasoning in *Nevada VTN*, the Court has equitable jurisdiction to review Innerline's independent action in equity even though Innerline could have brought a Rule 60(b) motion in the underlying action. 834 F.2d at 775; *see also U.S. Care, Inc. v. Pioneer Life Ins. Co. of Illinois*, 244 F. Supp. 2d 1057, 1061 (C.D. Cal. 2002) (treating independent action in equity as a Rule 60(b) motion for relief); *Mitchell v. Bd. of Cnty. Comm'rs of Cnty. of Santa Fe*, No. CIV 05-1155 JB LAM, 2011 WL 1330775, at *6 (D.N.M. Mar. 31, 2011) (describing the procedural benefits of independent actions in equity as a distinct suit where disputed facts may require additional discovery).

\* \* \*

In sum, the Court is satisfied Innerline has standing to challenge the Judgment, ancillary subject matter jurisdiction exists in this Court to hear that challenge, and the limits of equitable jurisdiction do not preclude Innerline's independent action. Thus, the Trust Funds' challenge under Federal Rule of Civil Procedure 12(b)(1) fails.

**II.  The Trust Funds' Motion to Dismiss under Rule 12(b)(6)**

The Trust Funds' 12(b)(6) motion is also unpersuasive. The Trust Funds argue for dismissal on grounds that (1) Innerline's independent cause of action fails to state a claim; (2) laches bar Innerline's claims; (3) ERISA requires dismissal; (4) no due process violation occurred because the stipulation binds Innerline; and (5) Innerline's unjust enrichment claim fails because Innerline has an adequate remedy at law under Rule 60(b)(4). The Court disagrees.

**A.  Independent Action in Equity**

To obtain relief from a judgment via an independent action in equity, a plaintiff must prove

the following elements exist:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of the defendant; and (5) the absence of any adequate remedy at law.

*See United States v. Beggerly*, 524 U.S. 38, 41 (1998). This is a demanding standard. Relief is only available "to prevent a grave miscarriage of justice." *Beggerly*, 524 U.S. at 47. Taking all inferences in favor of the non-moving party, Innerline met its burden to plead an independent action in equity.

### 1. A Judgment Which Ought Not Be Enforced

Innerline alleges the Court entered a judgment which ought not to be enforced. Specifically, Innerline requests relief from the Judgment because it is "void" as to Innerline. (Dkt. No. 34 at 8.) A judgment can be "void" when premised on "a violation of due process that deprives a party of notice or the opportunity to be heard." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). According to Innerline, the Judgment binds Innerline to guarantee Caribou and Padilla's debt. Innerline complains the Court entered this judgment without notice to Innerline. So, Innerline seeks an order that the Judgment is void as to Innerline. At this initial pleading stage, those allegations are sufficient to raise a claim.

The Trust Funds' contrary argument is unpersuasive. The Trust Funds contend that even if the Writ was void—for lack of notice to Innerline—that does not mean the Judgment is void. (Dkt. No. 40 at 14.) Specifically, the Trust Funds argue the Judgment was not premised on a due process violation, even if the Court found the Writ was premised on a violation. The Judgment here allowed the Trust Funds to bind non-signatories to the contract as guarantors and authorized the Trust Funds to obtain a writ of execution against those guarantors without notice. (Dkt. No. 34-1 ¶¶ 3, 12.) The Trust Funds have not persuaded the Court that a non-party bound under this scheme cannot as a matter of law obtain relief from a judgment that purports to bind that non-party as a guarantor.

The Trust Funds cited authority is inapposite. In *Garcia v. United States*, No. 20-55670,

10

2021 WL 3202164, at *1 (9th Cir. July 28, 2021), for example, the Ninth Circuit affirmed that a party cannot raise a due process challenge to a judgment when the alleged due process violation occurred at a stage completely unrelated to the judgment. There, the plaintiff's counsel failed to appear at an Order to Show Cause hearing when the district court required the defendant to appear. (*See* C.D. Cal. No. 17-6380-DSF-AFM; Dkt. No. 63 at 2-3.) The district court found "any purported due process violation or misrepresentations made at the OSC Hearing did not result in the MTD Order and Judgment; instead they were based on Plaintiff's failure to oppose the motion to dismiss." (*Id.* at 5.) That is not what happened here. Indeed, just the opposite is true. The purported due process violations here are inherent in the judgment and directly caused Innerline's injury.

The Trust Funds' citation to *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) is similarly unpersuasive at this stage of the litigation. There, the Court found no due process violation occurred even though the bankruptcy court failed to conduct an adversarial proceeding pursuant to the Federal Rules of Bankruptcy Procedure. *Id.* at 261. The Court emphasized that the creditor received "actual notice" of a bankruptcy plan "more than satisfied its due process rights." *Id.* Here, according to the Complaint's allegations, Innerline was not a party to the Judgment and received no notice before the Court entered the Judgment and executed the Writ under the Judgment. Drawing all inferences in Innerline's favor, the Trust Funds have not shown as a matter of law that Innerline received actual notice merely because Padilla signed the Judgment in his individual capacity.

### 2. Innerline's Defense

As to Innerline's defense and the mistake that prevented Innerline from raising that defense—the second and third factors necessary to state a claim—Innerline complains it was not a party to the settlement negotiation and the Judgment was issued without notice or an opportunity for Innerline to be heard in opposition. In other words, Innerline complains it was bound as a judgment debtor under the judgment despite never appearing in the underlying case. The Trust Funds argue Padilla represented Innerline in the underlying case so no due process violation occurred. But whether Padilla did, in fact, do so is a question beyond a 12(b)(6) motion to

11

dismiss.

### 3. The Absence of Fault and Negligence

The cases vary when describing this prong's requirements. Most cases describe this pleading requirement in negative terms—an "essential element" required to bring an independent action is the "absence of fault or negligence." *Beggerly*, 524 U.S. at 41; *State Bank*, 120 F. at 599; *Pickford v. Talbott*, 225 U.S. 651, 658 (1912). Some later cases have restyled this element as a requirement that plaintiffs plead "diligence." *S. Care, Inc. v. Pioneer Life Ins. Co. of Illinois*, 244 F. Supp. 2d 1057, 1062 (C.D. Cal. 2002) (citing 12 James Wm. Moore et al., Moore's Federal Practice § 60.82 (3d Ed. 2002)). But the treatise underlying that formulation cites cases requiring "absence of fault or negligence." *See id.* (citing *Carteret Savings and Loan Association v. Dr. Neil Jackson*, 812 F.2d 36, 39 (1st Cir. 1987); *Indian Head National Bank of Nashua v. Brunelle*, 689 F.2d 245, 250 (1st Cir. 1982)). Thus, to the extent those requirements differ, "the absence of fault or negligence" is the correct standard.

But that standard begs a question: a party must plead the absence of fault or negligence *as to what*? Or, alternatively, diligence *as to what*? The Trust Funds argue "Innerline cannot and has not shown that it is free of fault or negligence in its delay *in seeking relief* and in its failure to file a 60(b) motion at any time since 2018." (Dkt. No. 35 at 20) (emphasis added). In other words, the Trust Funds argue Innerline must be free from fault or negligence as to their efforts to seek relief from judgment. This argument misunderstands the nature of the "fault or negligence" prong.

Rather, this element requires a party prove the reason it failed to present a defense in the underlying action was not its own negligence. In *Pickford v. Talbott*, for example, equitable relief was unavailable because the party seeking relief based on newly discovered evidence could have found the evidence prior to the entry of judgment. 225 U.S. at 658. There, the party seeking relief satisfied the first three elements for an independent action: (1) an unjust judgment existed; (2) the party had a defense; and (3) a mistake or fraud barred the party from raising that defense earlier. But because the party seeking relief was the party who made the underlying mistake (i.e. the failure to investigate all available evidence), equitable relief was barred. *Id.* As another case stated:

12

> The power of a court of equity to relieve against a judgment, upon the ground of fraud in a proceeding had directly for that purpose, is well settled. The power extends also to cases of accident and mistake. But such relief is never given upon any ground of which the complainant, with proper care and diligence, could have availed himself *in the proceeding at law*. In all such cases he must be without fault or negligence. If he be not within this category, the power invoked will refuse to interfere, and will leave the parties where it finds them.

*Brown v. Buena Vista Cnty.*, 95 U.S. 157, 159 (1877) (emphasis added). Put differently, delay in raising a defense *after* judgment was entered is not co-extensive with "fault or negligence" in raising the defense *before* judgment was entered. Laches governs the former, the "absence of fault or negligence" governs the latter. *Id.* (discussing laches as a separate defense barring relief).

Applying that standard here, Innerline adequately pleads the absence of fault or negligence in raising its defense to the judgment. According to the complaint, the reason Innerline failed to defend itself in the underlying action is that Innerline was not a party to the underlying action. (Dkt. No. 34 ¶ 28.) That raises a plausible inference that Innerline's current defense is not barred by its negligence in the underlying action. The Trust Funds' contrary argument—that Innerline was "dilatory" in protecting its rights—speaks to laches, not negligence. (Dkt. No. 35 at 21.) So, in short, Innerline adequately pleads that the failure to object to the judgment prior to its entry was not the result of its own negligence.

### 4. Alternative Remedies at Law.

As to the last element, no alternative legal remedy exists to relieve Innerline from the allegedly void judgment. *See* Part I.3.b, *supra*, at 7-9. The availability of Rule 60(b)(4) does not preclude an independent action in equity.

\* \* \*

The Trust Funds' reliance on *Ayres v. MetLife, Inc.*, No. 21-CV-08523-JSC, 2022 WL 1801494 (N.D. Cal. June 2, 2022) is also inapposite. (Dkt. No. 35 at 18-19.) In *Ayres*, this Court dismissed an independent action in equity because the plaintiffs were parties in the underlying lawsuit, lacked a meritorious defense to that suit, and provided no explanation for why they waited over 20 years to bring their challenge to the underlying suit. Critically here, unlike the *Ayres* plaintiffs, Innerline was not a party to the underlying suit and raises a defense that—if proved on

13

1  the merits—could prove the Judgment was void for lack of notice to Innerline. And the judicially
2  noticeable facts here show that, unlike the *Ayres* plaintiffs, Innerline took at least some action to
3  protect its rights prior to filing this lawsuit. (*See* Dkt. No. 36-1 at 8.) So, at bottom, *Ayres* is not
4  persuasive here. Because Innerline meets the pleading requirements for an independent action in
5  equity, the Trust Funds' arguments for dismissal are unpersuasive

**B.** **Laches**

The Trust Funds next attempt to argue laches bars Innerline's equitable action and unjust enrichment claim. The Court disagrees at this early stage in the proceedings. As an initial matter, it is not clear that laches can bar Innerline's independent action in equity. Laches traditionally applies to independent actions in equity. *See* Fed. R. Civ. P. 60 advisory committee's note ("Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations.") But the Ninth Circuit has held "[a] void judgment cannot acquire validity because of laches on the part of the judgment debtor." *In re Ctr. Wholesale, Inc.*, 759 F.2d 1440, 1448 (9th Cir. 1985) (calling delay in bringing a Rule 60(b)(4) motion "irrelevant" even in light of Rule 60(c)'s command that such motions must be brought within a reasonable time). Innerline argues this independent action is a motion for relief from a void judgment. Thus, if the principles underlying Rule 60(b)(4) apply to independent actions seeking relief from a void judgment, *see Nevada VTN*, 834 F.2d at 775, laches may not apply to the independent action.

Even if laches applies, however, dismissal of either equitable claim based on laches is premature on this 12(b)(6) motion. It matters *why* Innerline waited to bring its claims. *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012) ("In determining the reasonableness of the delay, courts look to the cause of the delay.") Drawing all inferences in Innerline's favor, it is possible Innerline's delay was reasonable given it was not a party to the underlying suit and it tried to contest the matter in state court within two years. The Trust Funds argue such delay was unreasonable based on *Garcia v. United States*, No. 20-55670, 2021 WL 3202164, at \*1 (9th Cir. July 28, 2021) (affirming district court's denial of Rule 60(b)(4) motion brought 20 months after the offending order). (Dkt. No. 40 at 14.) But that case merely exemplifies why dismissal for unreasonable delay would be premature here. As the Ninth Circuit

14

noted in *Garcia*, "[w]hat constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties." *Id.* (quoting *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009)). For example, the district court in that case relied on declarations and evidence beyond the Rule 60 motion to determine the delay was unreasonable. (*See* C.D. Cal. No. 17-6380-DSF-AFM; Dkt. Nos. 61-1, 63.) Here, in contrast, the Court cannot rely on such evidence to determine laches here because the litigation has not proceeded beyond the pleadings. Thus, the Trust Funds' laches argument fails, at this stage at least, because the Court cannot find unreasonable delay based on the pleadings and judicially noticeable record alone.

### C. ERISA

The Trust Funds next argue "All Causes of Action must be dismissed as ERISA Provides Absolute Protection for Plan Benefits." (Dkt. No. 35 at 24.) The basis for Defendants' theory is 29 U.S.C. § 1103(c). That statute provides "the assets of a plan shall never inure to the benefit of any employer[.]" *Id.* The Trust Funds "contend that both Caribou and Innerline are employers under ERISA." (Dkt. No. 35 at 25.) Thus, the Trust Funds argue Innerline's claims must be dismissed because 29 U.S.C. § 1103(c)(2)(A)(ii) provides the exclusive means for "employers" to recover contributions employers make to ERISA plans by "mistake of fact or law."

This argument far exceeds the bounds of a motion to dismiss for failure to state a claim under Rule 12(b)(6). Neither the complaint nor any judicially noticeable documents establish as a matter of law Innerline is an ERISA employer, so it would be error for the Court to consider the ERISA theory at this stage. Thus, the Trust Funds' motion to dismiss on ERISA grounds fails.

### D. The Stipulation and Cal. Code Civ. P. § 187

Innerline pleads the underlying judgment is void in part because Innerline never received notice of the judgment under California Code of Civil Procedure § 187. (Dkt. No. 34 ¶ 17.) The Trust Funds argue the Court should find the procedures under that statute unnecessary because the Judgment clearly and unambiguously bound Innerline. In the alternative, the Trust Funds argue adding Innerline as a judgment debtor did not violate due process because Innerline was Padilla's

15

1    alter-ego.  Neither argument warrants dismissal at this stage.

2    　　　　Even if the Court assumes compliance with California Code of Civil Procedure § 187 is

3    unnecessary when a stipulation purports to bind a non-party in the case,[3] Defendants' arguments

4    both boil down to the same merits question: could Padilla bind Innerline to the judgment?

5    　　　　The relevant provision in the stipulation states:

> [A]ll successors in interest, assignees, and affiliated entities (including, but not limited to, parent or other controlling companies), and any companies with which either Defendant joins or merges, if any, shall also be bound by the terms of this Stipulation as Guarantors. **This shall include any additional entities in which Guarantor is an officer**, owner or possesses any controlling ownership interest. All such entities shall specifically consent to the Court's jurisdiction, the use of a Magistrate Judge for all proceedings, and all other terms herein, in writing, at the time of any assignment, affiliation or purchase.

12   (Dkt. No. 34-1 at 3 (emphasis added).)  Innerline pleads Padilla was Innerline's CEO when he

13   signed this agreement.  (Dkt. No. 34 ¶ 16.) Based on this allegation, the Trust Funds argue

14   Innerline is clearly and unequivocally bound under the agreement as a matter of law.

15   　　　　The Trust Funds have not persuaded the Court Innerline is so bound and thus cannot state a

16   claim to set aside the Judgment.  Padilla signed the bottom of the stipulation twice: once as

17   "President of Defendant Caribou Energy Corporation" and once as "individual Defendant and

18   Guarantor."  (Dkt. No. 34-1 at 10.)  Taking all inferences in the non-moving party's favor, those

19   specific signature-block titles raise a reasonable inference Padilla was *not* signing the document as

20   Innerline's CEO. Thus, the Court cannot determine Innerline is bound by the stipulation as a

21   matter of law based on the pleadings. Nor can the Court conclude Innerline was Padilla's alter-ego

22   based on the complaint alone.

23   　　　　The Trust Funds' contrary arguments are unpersuasive.  They point to Cal. Corp. Code §

---

[3] The Trust Funds argue compliance with Section 187 is unnecessary where a stipulation binds a party.  Innerline disagree, citing *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.*, 75 Cal.App.4th 110 (1999) for the proposition that such stipulations do not supplant notice under Section 187.  The Trust Funds counter that Section 187 is merely one way to bind a third party, not the *only* way to bind a third party. The Court need not reach this dispute because, as discussed below, the Court cannot find the stipulation is clearly and unequivocally binding on Innerline at this stage.

16

7214 for the proposition that Padilla, as CEO of Innerline, bound Innerline when he signed the agreement. But that law only governs "contracts between any corporation and another person." Corp. Code § 7214. The very debate here is whether this was, in fact, a contract between Innerline and the Trust Funds. Taken to its extreme, Defendants' position could lead to absurd results. For example, were Padilla an officer of a local chapter of the Boys and Girls Club, would the Boys and Girls Club be on the hook for this judgment too?

The Trust Funds cited authority is likewise inapposite to the factual circumstances here. *See Bay Area Painters & Tapers Pension Tr. Fund v. De Martinez Painting, Inc.*, No. C-09-3098 MMC, 2010 WL 2382418 (N.D. Cal. June 10, 2010). In *Bay Area Painters*, the district court enforced a stipulation against the CEO of the underlying defendant even though the CEO was not a party to the lawsuit and was never personally served in the case. But, although he was not a party to the lawsuit, the CEO seeking relief there *signed the stipulated judgment in his individual capacity* and the stipulation specifically recited that he was guaranteeing the judgment in his individual capacity. *Id.* at *1-2. So even though he was not a defendant in the lawsuit, he was a party to the judgment. Drawing all reasonable inferences in Innerline's favor, that is not what happened here. The dispute here is whether a party allegedly not represented in a stipulation can be bound via its CEO who signs the stipulation in his individual capacity. *Bay Area Painters* would be on point if Padilla sought relief from judgment. But Padilla is not the Plaintiff here. Innerline is. So *Bay Area Painters* is irrelevant to this dispute.

### E.   Unjust Enrichment & Adequate Remedies at Law.

The Trust Funds also move to dismiss Innerline's claim for unjust enrichment because Innerline has a remedy at law under Federal Rule of Civil Procedure 60(b)(4).[4] This argument fails because, as explained above, the Trust Funds cite no support for the proposition that Rule 60(b)(4) provides a remedy "at law." Nor do the Trust Funds cite any case explaining how relief

---

[4] The Trust Funds initially argued there is no claim for unjust enrichment under California law. (Dkt. No. 35 at 33 citing *Walker v. USAA Cas. Ins. Co.*, 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007)). But, the Trust Funds later acknowledged the Ninth Circuit has recognized claims for unjust enrichment under California law. *See Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1070 (9th Cir. 2014); *Astiana v. Hain Celestial Gp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

17

from judgment under Rule 60(b)(4) would result, in and of itself, in the return of the levied money. Innerline seeks restitution, not just a finding the underlying judgment is void. Thus, the Trust Funds motion to dismiss the unjust enrichment claim fails.

### F. Conversion

While the Trust Funds ask the Court to dismiss Innerline's conversion claim, the motion does not make any argument specific to that claim other than denying the Court's subject matter jurisdiction over it. (Dkt. No. 35 at 20.) Because the Court determines subject matter jurisdiction exists here, the Trust Funds' motion to dismiss the conversion claim fails.

## CONCLUSION

The Trust Funds' motion to dismiss is DENIED. Innerline has standing to challenge the judgment, the Court has jurisdiction to hear that challenge, and Innerline states a claim. A Case Management Conference is set for April 27, 2023 at 1:30 P.M. via Zoom video. A joint case management conference statement is due one week in advance.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 35.

Dated: March 28, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge